**Francisco AVILES–MARTINEZ and Miguel A. Flores–Colon, Plaintiffs, Appellants,**

v.

**Guillermo Jimenez MONROIG, etc., et al., Defendants, Appellees.**

**No. 91–1690.**

United States Court of Appeals, First Circuit.

Heard Mar. 2, 1992.

Decided April 30, 1992.

Frank Rodriguez–Garcia with whom Francisco J. Rodriguez Juarbe was on brief, for plaintiffs, appellants.

Carlos Lugo Fiol, Asst. Sol. Gen., with whom Anabelle Rodriguez, Sol. Gen., was on brief for defendants, appellees.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and CYR, Circuit Judge.

FEINBERG, Senior Circuit Judge:

Plaintiffs Francisco Aviles Martinez (Aviles) and Miguel A. Flores–Colon (Flores) appeal from a judgment of the United States District Court for the District of Puerto Rico, Jaime Pieras, Jr., J., granting summary judgment in favor of defendants-appellees Carmen M. Rivera Vasquez (Rivera) and Guillermo Jimenez Monroig (Jimenez) and dismissing plaintiffs' claims of political discrimination under 42 U.S.C. § 1983 and the laws and Constitution of Puerto Rico. 764 F.Supp. 240. For the reasons set forth below, we affirm the dismissal of all of Aviles's claims, affirm the dismissal of Flores's claim against Rivera, reverse the dismissal of Flores's claim against Jimenez and remand that claim for further proceedings.

## I. *Background*

Plaintiff Aviles is the Deputy Manager of the Ponce office of the Automobile Accident Compensation Administration (ACAA) (Spanish acronym), which is a quasi-private agency created by the Puerto Rican government. Plaintiff Flores was a super-

visor in the Ponce office until his alleged constructive discharge in 1987. Both plaintiffs' jobs are "career positions," meaning that the employee can be removed only for cause, *see Agosto-de-Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1213 n. 3 (1st Cir. 1989) (en banc), and that party affiliation is therefore not an appropriate job requirement. Plaintiffs, who allege that defendants knew of their political party affiliation, are members of Puerto Rico's New Progressive Party (NPP). Defendants are members of Puerto Rico's Popular Democratic Party (PDP), which won control of the Puerto Rican government in the Commonwealth's 1984 elections. Defendant Jimenez is ACAA Ponce Regional Manager and plaintiffs' immediate supervisor; defendant Rivera is ACAA Executive Director. Both Jimenez and Rivera, who hold "trust and confidence" positions, began working at ACAA in 1985.

Plaintiffs filed their complaint in October 1987. Aviles alleges the following. He was never the subject of any grievance or other disciplinary action from the time he began working at ACAA in 1977 until 1985. At that point, Jimenez became Manager and initiated a series of acts of political harassment against him, including: disconnecting his telephone; removing him from his office and assigning his office to a PDP member; assigning him menial tasks; excluding him from supervisor training sessions; prohibiting him from receiving outside calls; and designating lesser ranking employees to remain in charge when Jimenez was away from the office. Aviles claims that Jimenez in effect demoted him and that Rivera acquiesced in this treatment. Aviles seeks compensatory and punitive damages as well as injunctive relief restoring his full duties as Deputy Manager and enjoining defendants from further harassing him.

Flores also alleges that he began working at ACAA in 1977 and that he was never the object of a grievance or disciplinary measure until 1985. He claims that Jimenez's harassment and daily ridicule caused

---

* Of the Second Circuit, sitting by designation.

him to suffer an emotional crisis, at which point he requested a one-year leave of absence without pay. Rivera, Jimenez's superior, granted a leave for six months. Thereafter, however, Rivera refused to extend the leave for another six months as Flores requested, thereby forcing Flores to resign. Flores seeks reinstatement, backpay, compensatory and punitive damages, and an injunction against further harassment.

After extensive discovery, both plaintiffs and defendants filed motions for summary judgment. The district court granted defendants' motion and denied plaintiffs'. The court found that defendants had qualified immunity as to Aviles's claims for monetary damages because the illegality of politically motivated acts of retaliation short of dismissal was not clearly established at the time of defendants' actions. As to Aviles's claims for injunctive relief, the court held that Aviles had failed to meet his initial burden of demonstrating that political discrimination was the motivating factor in defendants' employment decisions, as required by *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

As to Flores's claims, Judge Pieras ruled that Jimenez's actions amounted to a constructive discharge. Nevertheless, Judge Pieras held that defendants had qualified immunity as to Flores's claims for monetary damages. The court apparently found that the illegality of a politically motivated constructive discharge had not been clearly established at the time of defendants' actions. Judge Pieras also held that although Flores met his initial burden under *Mt. Healthy*, Flores failed to overcome Rivera's showing that she legitimately exercised her discretion in denying Flores an additional leave of absence. Thus, the court held, Flores failed to show that Rivera would not have made the same decision even in the absence of his protected conduct. After dismissing plaintiffs' federal claims, Judge Pieras also dismissed the pendent state claims. These appeals followed.

## II. *Discussion*

### A. Aviles

As the district court correctly noted, a plaintiff bears the initial burden of showing that political discrimination was the substantial or motivating factor in a defendant's employment decision. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. The defendant must then show that the decision would have been the same even in the absence of the protected conduct. *Id.* A "plaintiff still will prevail if it is found that she would not have been fired *but for* her political affiliation." *Acosta–Sepulveda v. Hernandez–Purcell*, 889 F.2d 9, 13 (1st Cir.1989). The plaintiff must make a fact-specific showing that a causal connection exists between the adverse treatment and the plaintiff's political affiliation. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 58 (1st Cir.1990).

Although Aviles presented a long list of Jimenez's actions, none of the evidence demonstrates a political animus towards Aviles. As the district court stated: "Plaintiff Aviles has shown that Jimenez was a poor manager [who] generally accorded his employees rude treatment, but the plaintiff has failed to enumerate a single instance where Jimenez's conduct towards him was causally connected to the plaintiff's political affiliation." Aviles suggests that the proximity in time between the appointment of Jimenez and Rivera and the actions taken against him is indicative of political animus. However, we have held that, in response to a summary judgment motion, mere temporal proximity is "insufficient to generate a *genuine* issue of *material* fact." *See Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1172 (1st Cir.1988) (emphasis in original). Thus, Aviles did not offer sufficient evidence to establish a prima facie case of political discrimination.

Aviles claims that Rivera attempted to convert his career position to a "trust and confidence" position. As proof of Rivera's political animus, Aviles points to Rivera's statement that she did not put Aviles

in charge of the Ponce office when Jimenez was away because the position was one of trust that required a PDP member. Party affiliation, however, can be an appropriate requirement for confidential positions. *See Agosto-de-Feliciano*, 889 F.2d at 1216 n. 5. Since Jimenez clearly held a confidential position, Rivera's refusal to allow Aviles to assume Jimenez's responsibilities does not give rise to liability. Aviles also argues that Rivera's refusal to investigate the allegations and her failure to properly supervise Jimenez made her liable for Jimenez's actions. This argument is also without merit because Jimenez's conduct involving Aviles created no liability, as we explained above. Accordingly, we affirm the district court's grant of defendants' motion for summary judgment as to all of Aviles's claims. Because we find that Aviles failed to meet his initial burden of showing political discrimination, we need not reach defendants' argument that they were entitled to qualified immunity as to Aviles's claims.

### B. Flores

#### 1. *Constructive Discharge*

As an initial matter, we address the question whether Flores has presented sufficient evidence on the issue of constructive discharge to avoid summary judgment. If Flores was not constructively discharged, then defendants presumably would be entitled to qualified immunity in their individual capacities because, as we have held, political discriminatory action not rising to the level of a discharge was not a clearly established First Amendment violation at the time of defendants' actions. *See Roque–Rodriguez v. Lema Moya*, 926 F.2d 103, 108 (1st Cir.1991). If Flores was constructively discharged, then defendants were not entitled to qualified immunity. *See Castro–Aponte v. Ligia–Rubero*, 953 F.2d 1429, 1430 (1st Cir.1992) ("[T]he law [has] long been settled that where demotions or transfers were so onerous that they amounted to constructive dismissal, a constitutional violation had occurred.").

The standard for proving a constructive discharge is that " 'the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986) (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)). Flores alleged that Jimenez: removed all of Flores's files and then chastised him for not doing his work; told the staff that the office was not up to date because of Flores's irresponsibility; and scolded and ridiculed Flores in front of clients almost on a daily basis. Jimenez's continual harassment allegedly caused Flores to suffer an emotional crisis, at which point Flores requested a one-year leave of absence and was granted a six-month leave. At the end of the six months, Flores's doctor recommended that he take another six-month leave. Flores persuasively argues that when Rivera denied him an additional leave of absence, he was faced with the choice of being unfavorably terminated or returning to an unbearable work environment.

Furthermore, a co-worker testified that Jimenez had told her that if Flores returned to work, "he would make him leave." This statement provides compelling evidence that Jimenez intended his behavior to result in the discharge of Flores, either through a direct firing or a forced resignation. We also agree with the district court that Flores's employment with a private insurance company during his unpaid leave of absence is not a bar to a finding of constructive discharge. *See Alicea Rosado*, 562 F.2d at 119 ("a wrongfully discharged employee must use 'honest, earnest and intelligent efforts' to mitigate his losses"). Thus, Flores has presented sufficient evidence which, if proved, would constitute constructive discharge.

#### 2. *Political Discrimination*

We must still decide whether Flores has presented sufficient evidence of political discrimination to survive a motion for summary judgment. The district court found that Flores met his initial burden of showing that political discrimination was a substantial factor in Jimenez's actions to-

ward him. Flores alleged that Jimenez asked him if he had met with an NPP member and then told Flores that he knew everything about the meeting and knew all of Flores's "movements" because he had "excellent sources of information" inside Flores's party. As the district court noted, "[s]uch comments could very well be construed as a demonstration of Jimenez's political animus." In fact, defendants now concede that Flores met his initial burden at least as to Jimenez.

Jimenez apparently does not argue that he would have treated Flores in a similar manner even if he and Flores held the same political affiliation. Instead, Jimenez relies on the district court's finding that the only act precipitating Flores's resignation was Rivera's refusal to grant a second leave of absence. Thus, the argument follows, despite any harassment by Jimenez, he cannot be liable because Flores was constructively discharged only when Rivera refused to extend his leave.

We disagree with this reasoning. Due to Jimenez's actions, Flores may reasonably have felt that he could not return to work for an entire year. Although Flores did not actually resign until the denial of the second leave, he may have needed a second leave because of the ridicule he faced from Jimenez. We do not think that a supervisor whose allegedly discriminatory actions prompted an employee to resign can be shielded from liability simply because another supervisor technically (and for different reasons) caused the resignation. Thus, we hold that Flores has raised a genuine issue of material fact as to whether his constructive discharge by Jimenez was due to political discrimination.

■ Rivera argues that Flores failed to meet his ultimate burden of showing that her reason for refusing to grant him a second leave of absence was pretextual. She claims that her refusal was proper and reasonable because she had learned that Flores had obtained another job during his leave of absence. She determined that if Flores was well enough to work somewhere else, he could work at ACAA. Rivera also maintains that Flores presented no evidence that she had any political animosity against him. We agree that Flores has not presented evidence of Rivera's political animus and therefore find that Flores has failed to meet his burden under *Mt. Healthy.*

■ Flores contends that Rivera's refusal to investigate his allegations and her failure to properly supervise Jimenez made her liable for Jimenez's actions. Even assuming, *arguendo,* that a supervisor in the present context could be held liable for the illegal actions of an employee based on the supervisor's own " 'acts or omissions' " amounting to "deliberate indifference," *cf. Manarite v. City of Springfield,* 957 F.2d 953, 957 (1st Cir.1992) (citation omitted) (eighth amendment claim), Flores has not presented sufficient evidence to create a genuine issue of material fact as to Rivera's deliberate indifference. Nothing in the record shows that Rivera had been informed of Jimenez's harassment of Flores until Flores wrote to Rivera requesting a second six-month leave of absence. Even this letter, however, failed to state that Jimenez's harassment was based on political animus. In addition, in Flores's "Statement of Material Facts in Support of Motion for Partial Summary Judgment," submitted to the district court, Flores stated as a fact Rivera's deposition testimony that "Jimenez never let defendant Rivera know that Flores claimed that his condition was due to Jimenez' persecution." Thus, we affirm the district court's dismissal of Flores's claim against Rivera.

### 3. *Back Pay Award*

Judge Pieras held that Flores's request for a back pay award against defendants in their official capacities was barred by the Eleventh Amendment because it would in effect be a monetary claim against a department of the government of the Commonwealth of Puerto Rico. Flores argues that although ACAA is a public corporation, it is not a state instrumentality for the purposes of the Eleventh Amendment. The district court did not directly address this question and apparently assumed that the Eleventh Amendment applied. This

court has previously held that the Eleventh Amendment bars an award of back pay against a state or an alter ego of the state. *See Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1044 (1st Cir.1988). Accordingly, the question is whether ACAA is an alter ego of the state.

The factors to be considered in determining whether an entity is an alter ego of the state include "whether [the entity] performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the [entity] will be satisfied out of the state treasury." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir.1987); *see also Ainsworth Aristocrat Int'l Pty, Ltd. v. Tourism Co. of Puerto Rico*, 818 F.2d 1034, 1037 (1st Cir.1987). The record before us lacks the information needed for full consideration of these factors, especially the question whether a back pay award would have to be satisfied out of the state treasury. *See Figueroa–Rodriguez*, 863 F.2d at 1044. If plaintiff Flores is ultimately successful after remand, the district court should therefore receive evidence and make the necessary findings of fact as to whether ACAA is an alter ego of the Commonwealth of Puerto Rico. If the district court finds that ACAA is an alter ego, then Flores cannot obtain a retroactive monetary award, such as backpay or compensatory damages, against Jimenez in his *official* capacity. *See Fernandez v. Chardon*, 681 F.2d 42 at 59 (1st Cir.1982).

Judge Pieras also held that Flores could not obtain a monetary award against defendants in their *individual* capacities because defendants were entitled to qualified immunity. As we explained above, defendants were not entitled to qualified immunity as to Flores. Thus, Flores can obtain compensatory damages against Jimenez in his *individual* capacity, assuming, of course, that a jury finds in Flores's favor. *See Figueroa–Rodriguez*, 863 F.2d at 1043 n. 7; *Hernandez–Tirado v. Artau*, 874 F.2d 866, 873 (1st Cir.1989). In addition, we note that a trier of fact can consider

backpay as one of the items of compensatory damages. *See Artau*, 874 F.2d at 873.

Flores has also requested that we enter at least partial judgment in his favor and order reinstatement and an injunction against further political discrimination and harassment. However, with respect to Flores, we have held only that the district court erred in granting Jimenez summary judgment because genuine issues of material fact remain to be tried. We have not held that the court erred in denying plaintiff Flores's motion for summary judgment. There are obviously issues to be tried and there is no basis for us to enter a judgment now on the merits, partial or otherwise.

The judgment of the district court is *affirmed* with respect to Aviles, *affirmed* with respect to Flores's claim against Rivera and is *reversed* with respect to Flores's claim against Jimenez. The case is remanded for further proceedings consistent with this opinion.