Hart v. Univ. Sys. of NH          CV-94-369-SD  06/25/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Beverly Hart


    v.                                    Civil No. 94-369-SD


University System of
 New Hampshire;
Plymouth State College


O R D E R


In this civil action, plaintiff Beverly Hart, former department head of the Center for Women's Services at Plymouth State College (PSC), alleges that her employer discriminated against her on the basis of sex by paying similarly situated male employees a higher salary and by constructively discharging her when she requested that her salary and position be upgraded.

In a five-count complaint, plaintiff alleges violations of federal discrimination law and state common law.  Presently before the court is a motion for partial summary judgment filed by defendants University System of New Hampshire and PSC, requesting entry of judgment in their favor on Count II (Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681); Count IV (retaliation in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, et seq.); and Count V (wrongful termination under state law). Plaintiff has filed an assented-to motion to waive Counts II and V (document 12) and has moved to amend the complaint (document 13) to reflect the removal of these claims, among other things.[1] Plaintiff has also filed an objection limited to the issue of whether defendants are entitled to partial summary judgment on Count IV, retaliation under Title VII. Accordingly, the court will dedicate the remainder of the instant order to the resolution of defendants' motion as it relates to Count IV.

## Background[2]

In 1982 Hart was hired to head the Center for Women's Services ("the Women's Center"), which is a department within PSC's Division of Student Affairs. The Women's Center's general purpose is to address the needs of women on campus, to promote awareness of issues relating to women, and to provide a general support network for women faculty and students, particularly

---

[1]The court herewith grants plaintiff's motion to waive Counts II and V (document 12), without passing on the merits of defendants' motion for partial summary judgment in this respect.

[2]As this case comes before the court on a motion for partial summary judgment, the evidence is recited with a slant most friendly to the nonmoving party, Hart. The evidence will be supplemented when necessary in later sections of this order.

those experiencing the after-effects of a sexual assault. See Deposition of Jill Jones at 15 (Exhibit C to Plaintiff's Objection); Complaint ¶ 25.

Like male department heads within the division of student affairs, Hart's responsibilities included program development, staff supervision, and management of the department's budget. See Deposition of Richard T. Hage (Vol. II) at 31-32 (Exhibit A-1 to Plaintiff's Objection). However, although male heads of other departments were given the title of director, Hart was never officially given such a title, nor did she receive a salary commensurate with that of director. Another discrepancy is that while the male department heads all worked at 100 percent-time, Hart worked and was paid for, at most, 88 percent-time. See Deposition of Diane Brandon at 37 (Exhibit D to Plaintiff's Objection). In addition, other department heads were given larger working budgets than Hart's, as well as greater numbers of professional-level support staff. See Deposition of Beverly N. Hart (Vol. II) at 94-96 (Exhibit G-2 to Plaintiff's Objection).

Hart made repeated requests for more staffing, higher pay, an increase in her percent-time, a larger program budget, and a better location for the Center, which was situated in a basement room, to her immediate supervisor, Richard Hage, Dean of Student Affairs. See Hart Deposition (Vol. 1) at 14-16, 32-33, 46

3

(Exhibit G-1 to Plaintiff's Objection); Hage Deposition (Vol. 1) at 96, 107-08, 119-20, 144 (Exhibit A-1 to Plaintiff's Objection). Hage had the authority to institute budget, staffing, and percent-time decisions. See Affidavit of Suz-Ann Ring at 2 (Exhibit E to Plaintiff's Objection). However, he denied her requests.

Hart received an excellent work evaluation from Hage in or about March of 1993. In a meeting held in April of that year, Hart remarked to Hage something to the effect that "it was good to know that all of the women in women's positions in programs across the system were underpaid or that we were all classified at the same low level. That was good." See Hart Deposition (Vol. 1) at 60-61 (Exhibit G-1 to Plaintiff's Objection). After the meeting, Hart told Hage that the refusal to upgrade her position was discriminatory. See Hart Deposition (Vol. II) at 7 (Exhibit G-2 to Plaintiff's Objection). Shortly thereafter, Hage asked Hart to think about resigning due to what he described as complaints he had received about her performance; Hage subsequently requested her resignation on May 17. See Defendant's Memorandum in Support of Motion for Partial Summary Judgment at 6-7; Hage Deposition at 33-34 (Exhibit A to Defendant's Motion). Hart then spoke to Suz-Ann Ring, Director of Personnel, who told her she could file an internal

complaint against Hage and receive a hearing but that she would likely have to continue working with Hage. See Hart Deposition at 67-68 (Exhibit C to Defendant's Motion). At the time, Hart was aware that under PSC's personnel policies, she would have to be placed under probation before she could be terminated. See Hart Deposition (Vol. II) at 69-71 (Exhibit D to Defendant's Motion). In the spring of 1993, Hage reduced the number of hours Hart was to work from 88 percent-time to 75 percent-time.[3] See Hart Deposition (Vol. I) at 15 (Exhibit G-1 to Plaintiff's Objection); Ring Affidavit at 4. Hart subsequently submitted her resignation, effective August 16. See Letter of Beverly N. Hart (Exhibit B to Plaintiff's Objection).

On October 16, 1993, Hart filed a complaint with both the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission (EEOC) charging that defendants retaliated against her and discriminated against her on the basis of sex. Complaint ¶ 16. The EEOC issued Hart a right-to-sue letter on June 23, 1994. Id. ¶ 17. Hart filed the instant action on July 13, 1994.

---

[3]Hart was initially hired at 83 percent-time; that is, she worked 83 percent of a normal work week and received corresponding pay. In 1986 or 1987 her percent-time increased to 88 percent. See Hart Deposition (Vol. I) at 14 (Exhibit G-1 to Plaintiff's Objection).

<u>Discussion</u>

<u>1.  Summary Judgment Standard</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; <u>Lehman v. Prudential Ins. Co. of Am.</u>, 74 F.3d 323, 327 (1st Cir. 1996).  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case."  <u>Celotex Corp. v. Catrett,</u>, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable

6

to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

## 2. Constructive Discharge under Title VII

The sole issue presently before the court for review concerns plaintiff's claim that defendants discharged her in retaliation for her exercise of rights protected by Title VII. See 42 U.S.C. § 2000e-3(a) (providing that it is an unlawful employment practice for an employer to discriminate against an employee because he has opposed a practice violative of the Act).

There being no direct evidence of defendants' retaliatory animus, the parties' respective burdens of production are governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Fennell v. First Step Designs, Ltd., 83 F.3d 526, ___, 1996 WL 242333, at *9 (1st Cir. May 15, 1996). To establish a prima facie case of retaliatory discharge under Title VII, Hart must make the following showing: (1) she engaged in an activity protected by Title VII; (2) she was actually or constructively discharged from her employment; and (3) a causal connection existed between her

7

protected conduct and the discharge. <u>Hoeppner v. Crotched Mountain Rehabilitation Ctr.</u>, 31 F.3d 9, 14 (1st Cir. 1994); <u>Ramos v. Roche Prods., Inc.</u>, 936 F.2d 43, 48 (1st Cir.), <u>cert. denied</u>, 502 U.S. 941 (1991); 42 U.S.C. 2000e(3)(a). If a plaintiff makes out a prima facie showing, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its employment decision. <u>Fennell</u>, <u>supra</u>, 83 F.3d at ___, 1996 WL 242333, at *9 (citing <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991), <u>cert. denied</u>, 504 U.S. 985 (1992)). Once defendant has done so, plaintiff regains the burden of production and must show that defendant's proffered reason is a pretext and that the employment action was a result of retaliatory animus. <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993)).[4]

Defendants presently contest the second element of plaintiff's prima facie case; that is, they contend that the events leading up to Hart's departure from the Women's Center do not support that she was discharged from her position, constructively or otherwise. To establish a claim of

---

[4]Notably, although the <u>McDonnell Douglas</u> framework shifts the burden of <u>production</u>, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>St. Mary's Honor Ct.</u>, <u>supra</u>, 509 U.S. at 507 (quotation omitted).

8

constructive discharge, the evidence must support a finding that "'the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Greenberg v. Union Camp Corp., 48 F.3d 22, 27 (1st Cir. 1995) (quoting Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986) (further quotation omitted)); Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1186 (D.N.H. 1992). The applicable legal standard is objective, requiring an inquiry into the "reasonable state of mind" of the person experiencing the new conditions. Greenberg, supra, 48 F.3d at 27 (quotation omitted). Therefore, a claim for constructive discharge cannot hinge on an unreasonable reaction to one's work environment. Id.; Vega, supra, 3 F.3d at 481.

A plaintiff can legitimately be said to feel compelled to resign under a number of scenarios. A constructive discharge may occur when an employee's resignation resulted from new conditions that were particularly humiliating or demeaning; for example, by exposing him or her to ridicule in front of clients. Greenberg, supra, 48 F.2d at 27 (citing Aviles-Martinez v. Monroig, 963 F.2d 2, 6 (1st Cir. 1992)). Likewise, a demotion or a reduction in pay are also relevant considerations. See id. (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888-89 (3d Cir. 1984)). The First Circuit has also recognized that direct or circumstantial

evidence of discriminatory animus can substantiate the intoler able nature of one's working conditions. Id. at 28 (citing Acrey v. American Sheep Indus., 981 F.2d 1569, 1574-75 (10th Cir. 1992); Goss, supra, 747 F.2d at 888).

Viewing the evidence in a light most favorable to Hart, plaintiff has provided adequate evidence to support several of the factors applicable to the question of whether a constructive discharge has occurred. For example, on at least two occasions Hart's direct supervisor, Hage, either suggested she resign or asked for her resignation. Compare Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1991) (finding no constructive discharge in part because plaintiff "was never threatened with discharge; nor did her employer ever urge or suggest that she resign or retire"), cert. denied, ___ U.S. ___, 114 S. Ct. 441 (1993) with Downey v. Southern Natural Gas Co., 649 F.2d 302 (5th Cir. 1981) (holding that genuine issue of material fact regarding constructive discharge was created where superior specifically advised plaintiff that he "might" be discharged). Moreover, despite giving Hart a previous performance evaluation of excellent, which included plaintiff's ability to cooperate and interact with others, Hage began to confront her with complaints about her people-skills. See Acrey, supra, 981 F.2d at 1574 (jury's finding of constructive discharge

10

upheld in part because supervisor confronted plaintiff with list of deficiencies in performance). Also, significantly, around this time period, Hage reduced Hart's pay and time (from 88 percent-time to 75 percent-time).

In addition, plaintiff has provided circumstantial evidence of discriminatory animus that is arguably adequate to support a finding of constructive discharge. For example, it is notable that Hage's requests for Hart's resignation and his reduction in her pay and time followed shortly after Hart complained to Hage about gender discrimination.[5] See Mesnick, supra, 950 F.2d at

_____

[5]Defendants argue that Hage's request for Hart's resignation was based on nondiscriminatory reasons. For example, they name several people who were having difficulties with Hart and who complained to Hage, apparently prior to his suggestion that she resign. See Defendants' Reply Memorandum at 5. The court's review of this evidence leads it to conclude that a question of fact has been created, especially as Hage had received complaints about at least one other individual and apparently did not take the action of suggesting that she resign. See Deposition of Diane Brandon at 54-57 (Exhibit D to Plaintiff's Objection). Furthermore, defendants argue that Hage's decision to reduce Hart's pay was nonretaliatory because one other staff member in the division, Peter Otis, had his position entirely eliminated. However, it appears that Otis's position had been considered temporary, or "patched together", from its beginning and that Otis had not held his position for as many years as had Hart. See id. at 25-26. Defendants also argue, citing Brandon's testimony, that the reduction in Hart's position was part of a college-wide budget reduction in which approximately 30 staff members and positions were cut. See id. at 23 (Exhibit 5 to Defendants' Reply Memorandum). However, although the evidence again is sketchy, it appears that the reduction in Hart's salary, which occurred in the spring of 1993, occurred some time before the college-wide reduction, which was slated for 1994. Id. Finally, it is noteworthy that these decisions remained soundly

828 ("temporal proximity of an employee's protected activity to an employer's adverse action" may be circumstantial evidence of retaliation necessary for plaintiff to survive summary judgment). Moreover, it also may be significant that Hage's discriminatory conduct was continuous (more than one incident). Cf. Clark v. Marsh, 665 F.2d 1168, 1174 (D.C. Cir. 1981) (single instance of nonpromotion not sufficient to sustain claim of constructive discharge).[6]

A final, and very important, consideration is whether Hart took reasonable measures to correct or mitigate the unfavorable situation she was in before tendering her resignation. "Even the victim of unlawful discrimination is expected to seek legal redress while still employed unless actually fired, or constructively discharged due to a 'drastic reduction in the quality of working conditions.'" Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53, 55 (1st Cir. 1994) (quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119-20 (1st Cir. 1977)). As the evidence supports that Hart was constructively discharged, it

_____

within Hage's discretion. Id. at 26-27 (Exhibit D to Plaintiff's Objection).

[6]It also may be significant that Hart appears to have received unequal pay over a number of years. While working for years at unequal pay is not enough, by itself, to show that an employee has been constructively discharged, it nevertheless is a relevant consideration. Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 66 (5th Cir. 1980).

12

therefore was unnecessary for her to pursue legal redress while remaining in her job.

In a similar vein, other courts have concluded that a constructive discharge usually has not occurred where the employee first could have taken reasonable measures such as following the internal grievance procedure available at the workplace or filing a complaint with the EEOC before resigning. See Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir. 1993); Woodward v. City of Worland, 977 F.2d 1392, 1401-02 (10th Cir. 1992) (police dispatcher who quit after experiencing sexual harassment was not constructively discharged since she failed to report the incident to management), cert. denied, 509 U.S. 923 (1993). Of course, the availability of such procedures will not nullify an employee's claim of constructive discharge if the employee can show that following such avenue would have been a futile exercise. See Woodward, supra, 977 F.2d at 1402 (noting tangentially that if employee could reasonably perceive that lodging an internal complaint would have been futile, constructive discharge may have occurred); cf. Clowes, supra, 991 F.2d at 1161 n.6 (noting that filing an internal grievance is not required in all cases). Part of the rationale behind these cases is that "'society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is

13

attacked within the context of existing employment relationships.'" Bozé v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990) (quoting Bourque, supra note 6, 617 F.2d at 66 (citation and footnote omitted)).

Defendants' primary argument is that plaintiff's failure to take full advantage of alternatives available to her short of resignation such as filing an internal grievance undermines her claim that she was constructively discharged. However, pursuing an internal grievance procedure is not required in all cases, especially where an employee has otherwise shown that his or her working conditions are so intolerable that a reasonable person would feel forced to resign. See Clowes, supra, 991 F.2d at 1161 n.6.[7] Indeed, an employee's failure to take full advantage of an employer's grievance process is ordinarily given the most weight when the employee has otherwise not shown the elements of a constructive discharge. See, e.g., Bozé, supra, 912 F.2d at 805 (rejecting claim of constructive discharge because, inter alia, employee did not take full advantage of grievance process and

---

[7]In Clowes, the court went on to observe that because the plaintiff's complaints exclusively pertained to the actions of one supervisor, the court would heavily weight plaintiff's failure to seek a transfer. Id. This case is arguably distinguishable. While Hart's supervisor is similarly the focus of her complaint, Hart consulted with others, such as the personnel director and the general counsel, who arguably failed to quickly remediate her situation or to offer her an adequate position to which she could transfer.

14

because employer's alleged wrongdoing--discriminatory failure to promote--does not in and of itself result in constructive discharge). Here, as discussed above, the other factors support that plaintiff's work conditions were so intolerable as to compel her to resign, and therefore it is not devastating to plaintiff's case that she did not pursue the grievance procedure available within her employment. Moreover, as Hart argues, there is sufficient evidence to support that such course would have been a futile exercise. Hart admits that at the time Hage requested her resignation, she was aware that PSC's personnel policies would have entitled her to file a grievance before being terminated. See Hart Deposition (Vol. II) at 67. The Professional, Administrative and Technical Staff Handbook (PAT handbook) sets forth a procedural framework, including an appeals process, to be used by employees dissatisfied with working conditions, reprimands, terminations, or alleged discrimination. According to Hart, however, the option of pursuing a grievance within her workplace would have been an exercise in futility. What follows is a review (in a light most favorable to Hart) of the evidence relating to the futility issue.

Although Hart's immediate supervisor, Dean Hage, asked for her resignation, he did not follow internal guidelines applicable to involuntary terminations such as sending her a written notice

15

of her termination, affording her with a sufficient probationary period in which she could have had a chance to resolve deficiencies in her performance, and providing in writing a reason for her termination.[8]  See Ring Affidavit at 4 (Exhibit E to Plaintiff's Objection); PAT Handbook.  Under the PAT Handbook, a staff member may be given such opportunity prior to receiving notice of termination, and Personnel Director Suz-Ann Ring specifically instructed Hage to follow such procedures, but Hage refused.  See Ring Affidavit at 4; Hage Deposition (Vol. III) at 40 (Exhibit A-3 to Plaintiff's Reply Memorandum).  Hage had made up his mind that Hart should not continue working in her job. See Ring Affidavit at 4; Hage Deposition at 40.

Hart further asserts that she did in fact take steps to resolve the dispute internally, an alternative available under the PAT Handbook.  She spoke with the personnel director, who told her that Hage had not followed her advice to follow company policies and not ask for Hart's resignation.  Hart Deposition (Vol. II) at 66-67.  Ring informed Hart that she could write up a

---

[8]The PAT handbook provides that termination may be initiated either (1) by the employee as a voluntary resignation or (2) by the institution as an involuntary termination.  In cases of involuntary termination, the personnel office must be consulted and the employee must be given 90 days' written notice of the termination, which should include the reason for the termination, the effective date of the termination, the right to use the grievance procedure, and a deadline for filing a grievance.

complaint about Hage and have a hearing, but that, even if she prevailed, Hart would have to continue working with Hage. Id. at 67. In addition, Hart and her attorney met with University System counsel, Attorney Ron Rodgers, in an attempt to resolve her complaints about Hage, but Rodgers' response was to suggest that she file an internal grievance. Id. at 76.

Especially in light of the above-described conduct supporting constructive discharge, Hage's conduct, including ignoring the termination process set out in the PAT Handbook, not providing Hart with a probationary period, and disregarding the direction of the personnel director to follow such process, could reasonably have been perceived as an attempt to circumvent the formal grievance procedures and to pressure Hart to resign.

It is also significant that, when the evidence is examined in a light favorable to Hart, Hage's decision to terminate her appears to have been a foregone conclusion and that the personnel director informed Hart that even if her grievance succeeded she would still have to work with Hage and presumably be evaluated by him. Defendants present no evidence that, other than returning Hart to her job, the grievance procedure could have stopped Hage's acts of discrimination. For example, there is no evidence that Hage would have been disciplined or removed as her supervisor should Hart have ultimately prevailed. Thus, at least

17

arguably, the grievance process could reasonably have been perceived by Hart as a dead-end street leading her back to Hage, who would only have renewed his efforts to fire her or continued with his alleged pattern of discrimination. Moreover, although Hart did not pursue the formal internal grievance procedure, it is significant that rather than immediately leaving upon being asked to resign, she made some informal attempts to keep her job.

Finally, the defendants' remaining argument, that plaintiff should have pursued alternative employment within the college system, does not succeed in persuading the court to find as a matter of law that no constructive discharge has taken place. Both Hage and Ring suggested to Hart that she find another position in the college. See Hart Deposition (Vol. II) at 29, 67-69 (Exhibit E to Defendants' Motion for Partial Summary Judgment). However, when asked by Hart "specifically what he had in mind," Hage made suggestions but did not indicate he actually knew of an opening. Id. at 29. Similarly, Ring, the personnel director, had no specific suggestions of an alternative position. Id. at 67-68.[9] Nor did she indicate that a position would be

_____

[9]Defendants point out that plaintiff indicated to Ring that she was not interested in pursuing alternative employment within the University System; however, the court finds that this statement, when viewed in context, may have been a reasonable response to Hage's and Ring's vagueness. This creates a fact issue.

18

created for Hart. Id. at 68. Although defendants' argument would have significantly more merit if they could show either that they actually offered plaintiff a semi-comparable position within the college system, cf. Alicea Rosado, supra, 562 F.2d at 119-20 (employee transferred to position with less prestige than original position was not constructively discharged unless he was forced to endure a drastic reduction in the quality of his working conditions) or that such position was at least available, evidence of suggestions or negotiations regarding the possibility of a transfer will not suffice as a matter of law to preclude plaintiff's claim of constructive discharge, particularly where, as here, other factors support a constructive discharge. At best, the question created is a factual one that should be decided by the trier of fact.

The court is loath to encourage employees to avoid internal grievance procedures set up by their employers to resolve workplace disputes. However, in this situation, where there is sufficient evidence supporting that (1) such course would have been a futile exercise, (2) plaintiff's immediate supervisor did not follow company policy and thereby impeded plaintiff's ability to take full advantage of the process, and (3) plaintiff may have made a good-faith effort to resolve her complaints informally, and where, most importantly, other factors strongly indicate a

19

constructive discharge has taken place, the court finds and rules that the issue of whether a constructive discharge has occurred is best left to the trier of fact. Accordingly, defendants' motion for partial summary judgment is denied.[10]

### Conclusion

For the foregoing reasons, the court grants plaintiff's Assented-to Motion to Waive Certain Claims (document 12) and hereby dismisses Counts II and V. The court denies defendants' Motion for Partial Summary Judgment (document 8) as it relates to Count IV and denies as moot the remainder of said motion. Plaintiff's motion to amend the complaint (document 13) is granted, such amended complaint to be docketed as of the date of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

June 25, 1996

cc:  Eleanor H. MacLellan, Esq.
     Martha V. Gordon, Esq.

_____

[10]In light of plaintiff's waiver of certain claims and the court's denial of defendants' motion for partial summary judgment, the court herewith grants plaintiff's motion to amend (document 13). Such amended complaint shall be docketed as of the date of this order.

20