Schroeder v. Sager Elec.                CV-95-181-SD  04/24/97

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE


Mary-Ann Schroeder


        v.                              Civil No. 95-181-SD


Sager Electrical Supply
  Company, Inc.


                      O R D E R


    Plaintiff Mary-Ann Schroeder, a former salesperson for the
defendant, alleges that she was continuously denied promotions
and then constructively discharged in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  The
court previously granted defendant's motion for summary judgment
on plaintiff's discriminatory promotion claim, but, at the
defendant's request, did not decide plaintiff's constructive
discharge claim.  See Order of October 28, 1996.  The court also
gave plaintiff leave to amend her complaint to add a claim under
the Equal Pay Act, 29 U.S.C. § 206(d), but denied as futile her
motion insofar as she sought to add a state law claim for
wrongful discharge.

    Before the court is defendant's second motion for summary
judgment, which presently attacks the two remaining counts in
plaintiff's amended complaint--the EPA claim and the Title VII

claim for constructive discharge.[1]  Plaintiff objects to defendant's motion.

### Background

On April 30, 1984, plaintiff Schroeder was hired as a salesperson by defendant Sager Electrical Supply Company, and was promoted to the position of outside salesperson six months later. In 1988, while Schroeder was still working as an outside salesperson, a man allegedly less qualified than she and who had children was hired for the job of sales manager, a position senior to that of salesperson.  She was allegedly told that she did not get the job because she had recently married a man with three children and "she would want to spend more time at home." Complaint ¶ 11.

Schroeder was then passed over for promotion in 1990 and again in 1994, when defendant hired men to fill a branch manager position and a sales manager position, respectively.  Schroeder claims she was more qualified than both men.  The complaint further alleges that Schroeder was denied branch manager positions "in locations across the country, although such positions were offered to her male co-workers who were less

---

[1]The court herewith converts defendant's motion, entitled "Defendant's Second Motion to Dismiss and/or for Summary Judgment" into simply a motion for summary judgment.  This decision should not represent an unfair surprise to either side, as both parties have relied on matters outside the pleadings.

2

qualified and less senior than [she]."  Complaint ¶ 18.

After writing a letter to defendant in August of 1994, in which she informed it of the discrimination, Schroeder filed a Charge of Discrimination with the New Hampshire Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) on October 7, 1994.  The EEOC issued her a Notice of Right to Sue on January 12, 1995; Schroeder then filed the action in this court on April 6, 1995.

## Discussion

### 1.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing

3

sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255. Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## 2. Title VII: Constructive Discharge Claim

Under Title VII's prohibition against gender discrimination, an employer cannot discharge an employee or otherwise discriminate against such person "with respect to his compensation, terms, conditions, or privileges of employment" on

4

the basis of sex.  42 U.S.C. § 2000e-2(a).

There being no direct evidence of defendant's discriminatory animus regarding any of plaintiff's timely claims (as opposed to the 1988 promotion pass-over), the parties' respective burdens of production are governed by the three-step burden-shifting process set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Under said scheme, the employee must first establish a prima facie case of discrimination.

To establish a prima facie case, Schroeder must show that (1) she is a member of a class protected by Title VII, (2) her job performance was sufficient to meet Sager's legitimate job expectations, (3) she was actually or constructively discharged, and (4) she was replaced with someone with roughly her qualifications.  Cf. Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995).

Although plaintiff retains at all times the burden of persuasion, a prima facie showing will have the effect of shifting the burden of production to the defendant to articulate a legitimate nondiscriminatory reason for its employment action. See Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Once defendant has met its burden, the burden of production shifts back to plaintiff, who must then prove that the employer's justification is "a pretext for discrimination."  Smith v. F.W.

5

Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996). To satisfy its burden, plaintiff must introduce evidence sufficient "for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." See Udo, supra, 54 F.3d at 13.

Schroeder does not claim she was actually discharged. Instead, she claims that the conditions at her place of work became so onerous that she was forced to resign. To establish a claim of constructive discharge, the evidence must support a finding that "'the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Greenberg v. Union Camp Corp., 48 F.3d 22, 27 (1st Cir. 1995) (quoting Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986) (further quotation omitted)); Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1186 (D.N.H. 1992). The applicable legal standard is objective, requiring an inquiry into the "reasonable state of mind" of the person experiencing the new conditions. Greenberg, supra, 48 F.3d at 27 (quotation omitted). Therefore, a claim for constructive discharge cannot hinge on an unreasonable reaction to one's work environment. Id.; Vega, supra, 3 F.3d at 481.

A plaintiff can legitimately be said to feel compelled to resign under a number of scenarios. A constructive discharge may

6

occur when an employee's resignation resulted from new conditions that were particularly humiliating or demeaning; for example, by continuously exposing him or her to ridicule in front of clients. Greenberg, supra, 48 F.2d at 27 (citing Aviles-Martinez v. Monroig, 963 F.2d 2, 6 (1st Cir. 1992)). The court should also consider whether plaintiff has been demoted or forced to suffer a reduction in pay. See id. (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888-89 (3d Cir. 1984)). In addition, direct or circumstantial evidence of discriminatory animus can substantiate the intolerable nature of one's working conditions. Id. at 28 (citing Acrey v. American Sheep Indus., 981 F.2d 1569, 1574-75 (10th Cir. 1992); Goss, supra, 747 F.2d at 888).

In support of her claim that she was constructively discharged, plaintiff asserts that she was subjected to an overall pattern of sexual discrimination which left her no choice but to resign. In support thereof she states, and the court agrees, that there is direct evidence that in 1988 a male was promoted ahead of her for a discriminatory reason--her supervisor assumed that since she had just been married she would want to spend more time at home with her stepchildren. However, the court has previously ruled that since this event occurred outside the relevant limitations period, plaintiff would not be able to recover for it under a theory of discriminatory promotion. See Order of October 28, 1996. Plaintiff also submits the following

7

evidence to support that she was constructively discharged.

> [A] less qualified male was promoted ahead of her in 1990 even though defendant was aware that plaintiff wanted the promotion and despite the fact that plaintiff had been receiving excellent performance reviews; a less qualified male was promoted ahead of her in 1994 even though defendant was aware that plaintiff wanted the promotion and despite the fact that plaintiff had been receiving excellent performance reviews; one of plaintiff's former customers was called a 'lesbian' by the owner of Sager in 1993 after the former customer asked that plaintiff be reinstated to her account (because the male promoted ahead of plaintiff in 1988 was inadequately servicing that account); plaintiff's appearance was criticized by a superior at Sager in 1994 while the appearance of male co-workers was not similarly criticized; and two of plaintiff's largest and most successful accounts were taken from her in 1994 while the large accounts of her male sales counterpart were not taken from him.

Plaintiff's Opposition Memo at 3.

Review of this record reveals that plaintiff has failed to submit evidence which supports that she was constructively discharged, as required to make out her prima facie case. Certainly the isolated, ambiguous comments made by management personnel, once in 1993 and once in 1994, standing alone, are not sufficient to show constructive discharge. Moreover, although plaintiff alleges that she was subjected to an "overall pattern" of discrimination, the court has already ruled that she has failed to produce sufficient evidence to support such contention. See Order of October 29, 1996. Although Schroeder did have direct evidence that she was discriminated against in 1988 on the

8

basis of her sex, the court found that such evidence was too attenuated from the events occurring in 1994 to have any probative value.[2]

Thus the most substantial evidence to support a constructive discharge is the evidence that two of plaintiff's "largest and most successful accounts were taken from her in 1994," while the accounts of a male employee occupying a similar position were not taken from him. However, plaintiff submits no evidence as to what degree this action affected her pay. From the court's review of plaintiff's resignation letter, it appears that she even received a raise in 1994. See Letter of Mary Ann Schroeder, received August 30, 1994 (Exhibit B to plaintiff's opposition to defendant's first motion for summary judgment, document 11). See also Schroeder's employment reviews, Exhibit A to same document.

When the evidence is viewed in toto, the court cannot find that a reasonable person in Schroeder's position would have felt compelled to resign rather than seeking judicial relief while remaining in her position. "'[A] limited blow to one's pride or prestige does not provide reason enough to resign during whatever

_____

[2]Perhaps most notably, the 1994 decision to not promote her was made by a different person than the one who made the decision to pass her over for promotion in 1988. See Order of October 29, 1996, at 18. Of course, there may be cases when evidence of discriminatory intent occurring outside the limitations period can bear on whether an employer subsequently discriminated against an individual. However, for reasons previously stated, this case is not one of them.

9

period may be required to seek judicial relief.'" Serrano-Cruz v. DFI Puerto Rico, ___ F.3d ___, 1997 WL 114118, at *4 (1st Cir. Mar. 19, 1997) (quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119-20 (1st Cir. 1977)).

The age discrimination case relied upon by plaintiff does not persuade the court to find otherwise. In Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 563 (1st Cir. 1986), the court found that evidence of plaintiff's employer's repeated inquiries about plaintiff's resignation, the demotion of plaintiff, the promotion of a younger person, and the threat of onerous working hours if plaintiff did not resign could suffice to constitute constructive discharge. In the case at bar, there is no evidence of a demotion, much less a humiliating demotion where plaintiff's position was given to a less qualified male, nor is there evidence that Sager ever suggested that plaintiff resign or that it threatened her with more onerous working conditions if she did not resign.

The court does not make this decision lightly. In some cases, evidence of discriminatory animus can suffice to show constructive discharge. In her objection to defendant's motion for summary judgment on the constructive discharge claim, plaintiff argues that another employee at Sager was discriminated against on the basis of her gender, and attaches an affidavit of said employee, Kelly Smith. This employee alleges she was

10

discriminated against on the basis of being a single mother by Ray Norton, the same man who allegedly participated in the decision to promote a male candidate instead of the plaintiff in 1994.

Had plaintiff produced this evidence in response to defendant's original motion for summary judgment, which challenged her discriminatory promotion claim, the court might have decided the issue of discriminatory promotion differently. However, plaintiff's opportunity on this issue has come and gone-- plaintiff neither presented the evidence in her objection to defendant's original motion for summary judgment, nor did she do so when she moved for reconsideration. Plaintiff also does not present a reason for the delay in introducing this evidence. When Smith's affidavit is considered with this limitation; i.e., that it can have no bearing on plaintiff's discriminatory promotion claim, the court cannot find that it gives significant aid to plaintiff's constructive discharge claim.

2. The Equal Pay Act Claim

Under the Equal Pay Act, an employer is prohibited from paying unequal wages on the basis of sex to employees performing "equal work" on jobs requiring "equal skill, effort, and

11

responsibility." See 29 U.S.C. § 206(d)(1).[3] Plaintiff must make out a prima facie case by showing "that the employer paid different wages to an employee of the opposite sex for substantially equal work." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). Once a prima facie showing has been made, the employer must establish one of these affirmative defenses: "the wage discrepancy resulted from (i) a seniority system, (ii) a merit system, (iii) a system measuring earnings by a quantity or quality of production, or (iv) a differential based on a factor other than sex." Id.; 29 U.S.C. § 206(d)(1).

Plaintiff worked at Sager's Salem, New Hampshire, office and seeks to compare herself against employees who worked for Sager both in Salem and at other locations. In order to do so, she asserts that these offices make up a single "establishment" within the meaning of the EPA. See, e.g., Mulhall v. Advance

---

[3]29 U.S.C. § 206(d)(1) provides in pertinent part,

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

Security, Inc., 19 F.3d 586, 590 (11th Cir. 1994) (holding that those employees against whom an EPA plaintiff compares herself must work in the same establishment as she).

At the outset, the parties dispute who carries the burden regarding the "within an establishment" requirement. Defendant argues that the burden of showing a single establishment falls on the plaintiff as part of her prima facie case, while plaintiff claims that defendant has raised the issue as an affirmative defense.

The court finds and rules that the burden of showing a single establishment is properly shouldered by the plaintiff when she makes out her prima facie case. See, e.g., Mulhall, supra, 19 F.3d at 590; Foster v. Arcata Assocs., 772 F.2d 1453, 1464-65 (9th Cir. 1985); cf. Marcoux v. State of Maine, 797 F.2d 1100, 1103 (1st Cir. 1986) (noting that EPA plaintiff "must show that she was employed in the same establishment as her male counterpart in order to state a claim"). It is well settled that in making out her prima facie case a plaintiff must show that the comparator employees performed "equal work." See Byrd, supra, 61 F.3d at 1033. It follows that one way in which plaintiff must show the equality of the work performed is by showing the singularity of the "establishment" where that work takes place.[4]

---

[4]This interpretation is also supported by the layout of the language of 29 U.S.C. § 206(d)(1). The "establishment" language

The parties also dispute whether plaintiff has satisfied her burden of showing the existence of a single establishment within the meaning of the EPA. The term "establishment" refers to "a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business. Accordingly, each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). However, under certain unusual circumstances, two or more distinct physical locations of a business enterprise may be treated as a single establishment-- "[f]or example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." Id. at § 1620.9(b). A finding of a single establishment is supportable by evidence of centralized control and administration of disparate job sites. See Mulhall, supra, 19 F.3d at 591. Certain key factors are "centralized control of job descriptions, salary administration, and job assignments or functions." Id.

---

is present in the EPA's beginning portion, which also supplies the basis for plaintiff's prima facie case. See Byrd, supra, 61 F.3d at 1033. In contrast, the term "establishment" is not present in the latter portion, which sets forth the "exceptions" that serve as defendant's affirmative defenses.

14

Plaintiff claims that her position should be compared with those employees occupying similar positions at Sager offices located in Hingham, Massachusetts, and Wallingford, Connecticut. She claims that the various Sager offices were operationally controlled through the Hingham, Massachusetts, office, and that she would report directly to the Hingham office when she was working in Salem, New Hampshire. See Second Affidavit of Mary-Ann Schroeder ¶ 8. She further states that she would receive from the Hingham office daily and weekly figures on sales to her customers, and that any change in sales procedures or forms were generated by the Hingham office. Id. Plaintiff also provides specific examples to support her assertions that "[s]ales territories and customer accounts were interchangeable among Sager's sales offices and Sager's salespersons," id. ¶ 3, and that "Sager's inside and outside sales practices and procedures were the same among Sager's various offices," id. ¶ 6.

In support of its position, defendant submits evidence supporting the conclusion that "the ultimate hiring decisions for each [of its] offices were made by the superiors in that office." Second Affidavit of Gabrielle Jenkins ¶ 8. However, said affidavit also states, somewhat ambiguously, that "personnel functions" were "coordinated" through Sager's headquarters in Hingham, Massachusetts. Id.

The court's review of the evidence submitted leads it to

15

conclude that a genuine issue of material fact exists as to whether plaintiff has satisfied her burden with respect to the "establishment" prong of her prima facie case.  See generally Mulhall, supra, 19 F.3d at 592 (holding summary judgment for defendant would be improper if based solely on the "establishment" prong of plaintiff's prima facie case because a reasonable trier of fact could infer the existence of centralized control as well as the functional interrelationship between plaintiff and the employees against whom she sought to be compared).  Accordingly, defendant is not entitled to summary judgment on this basis.

Invoking the fourth EPA affirmative defense, Sager next argues that it is entitled to summary judgment because any wage differentials between its offices in Massachusetts, Connecticut, and New Hampshire are based on a factor "other than sex."  See 29 U.S.C. § 206(d)(a); Byrd, supra, 61 F.3d at 1033.  For the purposes of this argument, defendant concedes that "its male outside
sale representatives in its Massachusetts and Connecticut offices were, on average, paid more than the Plaintiff during the [r]elevant period."  See Defendant's Memorandum at 23.  However, defendant argues that the "market realities" at these offices required that higher salaries be paid.

In support of this argument, defendant asserts that the cost

16

of living in those regions is higher than in New Hampshire and that each of those states has a broad-based income tax system, while New Hampshire does not. However, defendant does not indicate to what degree the lack of an income tax in New Hampshire, or the purported lower cost of living, has affected pay rates. In rebuttal, plaintiff has submitted an excerpt from the United States Department of Commerce, Statistical Abstract of the United States (116th ed. 1996), from which one can conclude that the 1994 personal income per capita of New Hampshire was on average $1,836 less than that of Massachusetts and $4,835 less than that of Connecticut.[5] In contrast, the disparities in income between plaintiff and her male counterparts in Massachusetts and Connecticut appear to be significantly greater than that. For example, in 1994 plaintiff earned $11,294 less than employee "D", who worked in Massachusetts, and such figure does not include "D"'s $14,000 bonus. See Jenkins Affidavit ¶¶ 4, 9. As another example, in 1994 plaintiff earned $7,179 less than employee "J", who worked in the Connecticut office, leaving $2,344 unaccounted for by "market realities." The court has also reviewed an analysis performed by plaintiff's expert, Catherine Newick, who estimates that between the years of 1990 and 1994 the

---

[5]Specifically, the 1994 personal income per capita in New Hampshire was $22,532 as compared to $24,368 in Massachusetts and $27,367 in Connecticut.

17

average salary of female salespersons at Sager's New England offices ranged between 20 percent and 27 percent below that of male salespersons.

Accordingly, having reviewed the parties' submissions, the court concludes that a genuine issue of material fact exists on plaintiff's EPA claim, precluding judgment as a matter of law.

### 4. Intentional Wage Discrimination in Violation of Title VII

Much to the court's surprise, plaintiff argues in her objection that she has asserted a Title VII intentional wage discrimination claim. Plaintiff further argues that because defendant has not moved for summary judgment on this claim, the claim remains viable. The court surmises that defendant did not seek summary judgment on such claim because it had no notice of such claim, nor did the court. The claim was not mentioned when plaintiff filed an objection to defendant's first motion for summary judgment, nor did the plaintiff mention such claim by name when it filed a motion to amend the complaint. Plaintiff argues that such claim was embodied in certain allegations in the complaint that also support her EPA claim. Having reviewed the amended complaint, the court respectfully disagrees with plaintiff that a claim for intentional wage discrimination in violation of Title VII has been properly pled.

18

## Conclusion

For the reasons stated above, the court grants defendant's second motion for summary judgment as to plaintiff's Title VII/constructive discharge claim and denies the motion as to plaintiff's EPA claim.  As a result, defendant is entitled to summary judgment on plaintiff's Title VII claim in its entirety.

Finally, the court grants defendant's motion to continue the discovery deadline (document 39).  The deadline for defendant's expert disclosure is now May 23, 1997; the deadline for the close of discovery is now June 23, 1997.  The trial date remains set for the two-week period beginning July 22, 1997.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 24, 1997

cc:   Thomas J. Pappas, Esq.
      Linda S. Johnson, Esq.
      James M. Hughes, Esq.

19