Zuleima **LEON** et al., Plaintiffs,

v.

**Angel M. SANCHEZ–BERMUDEZ et al., Defendants.**

**Civil No. 01–1281(DRD).**

United States District Court, D. Puerto Rico.

July 31, 2004.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Jose A. Santiago–Rivera, Pinto–Lugo, Oliveras & Ortiz, PSC, San Juan, PR, for Defendants.

## OPINION & ORDER

DOMINGUEZ, District Judge.

Plaintiffs, Zuleima León, Iván R. Cruz–Serrano[1] and Zuleide Cotto–León filed a complaint against the Municipality of Santa Isabel, Mayor Angel Sánchez–Bermúdez, Graciela Torres–Vázquez, and Zenaida Santiago. Plaintiffs sustained that their First, Fifth and Fourteenth Amendment rights were violated when Defendants cancelled León's Section 8 Federal Housing Subsidy dwelling rights.

Pending before the Court is *Defendants' Motion for Summary Judgment* (Docket No. 44) sustaining that plaintiffs failed to establish a prima facie First Amendment claim, that plaintiffs' due process claim is barred by res judicata and that plaintiffs failed to proffer the required evidence as to their Section 1985 conspiracy claim. Defendants further affirmed that Mayor Angel M Sánchez–Bermúdez had no personal involvement in order to warrant a relief against him in his personal capacity. Further, as to co-defendants Graciela Torres–Vázquez and Zenaida Santiago, defendants sustained that they are protected by the qualified immunity doctrine. The Court referred the matter to Magistrate Judge Aida M. Delgado–Colón (Docket No. 59). Magistrate Delgado–Colón issued a Report and Recommendation (Docket No. 60) recommending that *Defendants' Motion for Summary Judgment* be granted in its entirety and that the case be dismissed.

Plaintiffs timely filed an opposition via their *Motion Opposing to the Magistrate's Report and Recommendation* (Docket No. 61). Plaintiffs objected to the Magistrate's Report and Recommendation alleging that it "is totally unsounded (sic) to the real and truthful facts of this case". (Docket No. 61 p. 2) Further, plaintiffs objected to the Magistrate's conclusion of a failure to establish a prima facie discrimination claim, and that they were unable to demonstrate Mayor Angel Sánchez–Bermúdez's personal involvement in the cancella-

---

1. Plaintiff Iván R. Cruz Serrano's claim was dismissed for lack of standing. (Docket No. 29).

tion of plaintiff León's Section 8 subsidy. Finally, plaintiffs objected to Magistrate's conclusion that co-defendants Graciela Torres–Vázquez, and Zenaida Santiago are protected by the qualified immunity doctrine. Defendants duly replied to plaintiffs' objections. (Docket No. 62).

After conducting a de novo review of the Magistrate Judge's Report and Recommendation by examining the parties' pleadings, depositions, documents, admissions on file, together with the affidavits, the Court is not persuaded by plaintiffs' arguments and, for the reasons stated below, the Court accepts and adopts the Magistrate's recommendation. Accordingly, *Defendants' Motion for Summary Judgment* is granted.

## I.

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate.

The "written objections shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections." Local Rule 72(d). Provided that plaintiffs, have objected the Magistrate's determination, the Court shall make a *de novo* determination of the Magistrate's Report and Recommendation.

## II. *Summary Judgment Standard*

Summary judgment is a procedural device designed to screen out cases that present no trial worthy issues. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.,1995). *Plumley v. Southern Container Inc.*, 303 F.3d 364, 368–69 (1st Cir., 2002). The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir., 1995).

In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material fact. *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 227–28 (1st Cir.,1992). The moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). That requires supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the movant bears the burden of proof. *McIntosh v. Antonino*, 71 F.3d at 33. A fact is "material" if it potentially could affect the suit's outcome. *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). An issue concerning such a fact is "genuine" if a reasonable fact finder,

examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *Id.* Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

Once the movant has fulfilled this obligation, the burden shifts to the summary judgment target to demonstrate that a trial worthy issue exists. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d at 187; *see also Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. (citing*

*Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Further, unsettled issues of motive and intent as to the conduct of any party—as may arise in actions under §§ 1983 and 1985—will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

After reviewing defendants' motion for summary judgment and plaintiffs' opposition, pleadings, depositions, documents and admissions in file, the Court finds the following factual scenario.

### III.  Uncontested Facts

1.  On May 1, 2000, plaintiff Zuleima León, hereinafter León, entered into a Section 8 rental subsidy contract with the Municipal Housing Authority, hereinafter MHA. Besides León, the other household member included in the contract was Zuleide Cotto–León, León's disabled and minor daughter. León entered into a rental contract with Felix Bulgado for an existing home in the Municipality of Santa Isabel. On said occasion, León certified that she was duly informed that commercial, illicit or profitable use of the unit could result in the cancellation of the Section 8 contract.

2.  In 2000, León was engaged to Iván R. Cruz–Serrano [2], hereinafter Cruz–Ser-

---

**2.**  Iván Cruz–Serrano was a plaintiff in the instant case but his claim was dismissed on November 23, 2001 when the Court concluded that he was a "third person unrelated party who has suffered no personal violation of his constitutional rights and, thus, has no

standing to sue under 42 U.S.C. § 1983." (Opinion and Order, Docket No. 29, p. 1). Further, as stated in this order, Zuleima León was not involved in the activities of Iván Cruz Serrano of challenging P.D.P. voters due to lack of compliance with geographical residen-

rano, who was the President for the New Progressive Party (N.P.P.)Youth Organization of Santa Isabel. During the political campaign of the general elections of 2000, Cruz–Serrano participated in the systematic exclusion, from the electoral lists, of many members of the Santa Isabel governing Popular Democratic Party (PDP).[3]

3. Cruz–Serrano was nicknamed "el paparazzi" by PDP followers. After Cruz–Serrano lost his first electoral challenge, PDP activists discussed the loss during a radio program. Nowhere in the radio program's transcript is León's name mentioned.

4. Cruz–Serrano admitted that León is not a political activist and is not affiliated to any political party. She is, therefore, not a N.P.P. known member.

5. Angel M. Sánchez–Bermúdez, hereinafter Sánchez–Bermúdez, is the Mayor of Santa Isabel.

6. Mayor Sánchez–Bermúdez was present during the above mentioned radio program where Cruz–Serrano's loss of an electoral challenge was discussed.

7. Víctor Borges–Alvarez is the director of the above mentioned radio program and the husband of co-defendant Zenayda Santiago, hereinafter Santiago, Housing Inspector for the MHA.

8. Co-defendants, Santiago and Graciela Torres–Vázquez, hereinafter Torres–Vazquez, the Housing Director, stated that they did not have knowledge of the mentioned radio program where the Mayor participated and where Cruz–Serrano's political activity was discussed.

cy requirements. Moreover, Zuleima León is not a known member of the N.P.P. as is Iván Cruz–Serrano.

**3.** *Cruz–Serrano dedicated himself to the challenging of P.D.P. electoral voters by disqualifying them due to non compliance with resi-*

9. On August 28, 2000, Santiago went to inspect the unit where León lived, but she was not home. Santiago noted that one of the two vehicles that were parked in front of the unit exhibited a "For Sale" sign.

10. On September 5, 2000, Santiago returned to León's house for a follow up inspection. A report was issued and signed by León. The report noted that of the two vehicles parked before the house, one of them exhibited a "for sale" sign. However, León claims that she signed the report while the same was devoid of any information.

11. On September 5, 2000, Torres–Vázquez, via certified mail, notified León that her Section 8 contract would be cancelled due to violations to her contractual duties. The letter was received in September 6, 2000.

12. In the cancellation letter, Torres–Vázquez indicated that León violated section 12 D and F of the rental contract which specified that "the unit shall not be used for commercial purposes of any kind" and "no advertising signs may be placed or installed." The notification forewarned León that she had ten days to object the determination.

13. On September 11, 2000, an informal hearing was conducted where León was informed by Torres–Vázquez that she had the right to be accompanied with an attorney. However, she was informed that she could attend without a lawyer. León decided to attend the hearing without the lawyer.

dency requirements. The vote for governor would not be disqualified, however, the vote for mayor, local representatives, senators, together with the municipal assembly would be affected.

14. In said hearing, León was notified of the imputed contractual violations. She admitted that the vehicles belonged to her then boyfriend Cruz–Serrano, but stated that she was not selling the vehicles. León stated that the cars were Cruz–Serrano's and she used one of them to take her child to her therapies and appointments. León was informed that she was responsible for the rental payments of the unit beginning in October 2000. This Minute was signed by León, Torres–Vázquez and Santiago.

15. Cruz–Serrano has admitted that he sold a few cars (one or two at a time) and loaned León a used car for her use.

16. León filed a complaint at the State Court against the Municipality of Santa Isabel, Mayor Sánchez–Bermúdez and Torres–Vázquez requesting a *Writ of Mandamus* ordering co-defendants to celebrate an administrative hearing as to the cancellation of León's Section 8 benefits. León alleged that her Section 8 benefits were terminated without due process of law and without notification, in violation of state and federal laws, that the Municipality failed to provide her with an administrative hearing and that the failure to hold a hearing resulted in damages to plaintiff León and her minor child.

17. The State Court received the testimony of Torres–Vázquez, who testified that an administrative hearing was held in September 11, 2000. Documentary evidence corroborating said testimony was submitted. Further, León, during cross examination, admitted being summoned for the hearing and attending to the same. Furthermore, León acknowledged being notified of the imputed violations and that she voluntarily signed the document proffered as evidence by the Municipality.

18. The State Court concluded that the issuance of the *Mandamus* requested was moot since the hearing was celebrated on September 11, 2000. Further, the Court concluded that an administrative hearing was held and that in said hearing León's due process rights were duly observed by the Municipality. On January 22, 2002, Judgment was entered which became final and unappealable on April 2, 2004.

19. On March 8, 2001, Plaintiffs filed this § 1983 action.

20. On April 26, 2001, the Municipality of Santa Isabel and the Municipal Housing Administration reinstated León's Section 8 subsidy pending the resolution of León's current federal claims.[4]

## IV. Plaintiffs' Objections and Analysis

Plaintiffs filed a § 1983 claim against the Municipality of Santa Isabel, its Mayor Sánchez–Bermúdez, Santiago, the Housing Inspector for the MHA and Torres–Vázquez, the Housing Director alleging violation of plaintiffs' First, Fifth and Fourteenth Amendment. Plaintiffs alleged that defendants used a federal housing program to politically discriminate against them. Plaintiffs sustain that the Municipality of Santa Isabel through the actions of Co–Defendants cancelled plaintiff León's Section 8 benefits for political motivations (reprisal against "Paparazzi") depriving her of property without providing the required due process. Finally, they alleged that the political discrimination was conducted with Mayor Sánchez–Bermúdez's express or tacit approval.

Defendants filed a *Motion for Summary Judgment* requesting the dismissal of the complaint. Defendants sustain that plaintiffs failed to establish a prima facie First Amendment Claim since León's relationship with Cruz–Serrano was personal and was not intertwined with her political be-

---

**4.** The Court infers that plaintiff did not pre-    vail in her administrative claims.

liefs acts or associations. They aver that "there is no evidence that León had engaged in any constitutionally protected activity". Accordingly, defendants argue, that at the time of the alleged discrimination, no protected political activity existed. Further, defendants affirm that plaintiffs' due process claim is barred by res judicata since the State Court issued a final determination as to this matter concluding that plaintiffs' due process rights were not violated by the Municipality. Furthermore, defendants sustain that plaintiffs failed to proffer any evidence as to their § 1985 conspiracy claim. Finally, they allege that Mayor Sánchez–Bermúdez had no personal involvement in the cancellation of plaintiff's dwelling rights to warrant relief on his personal capacity and that co-defendants Torres–Vázquez and Santiago are entitled to qualified immunity.

This motion was referred to the Magistrate Judge for a report and recommendation. The Magistrate concluded that defendants were entitled to brevis disposition as to all of plaintiffs' claims, therefore recommended that *Defendants' Motion for Summary Judgment* be granted and the case be dismissed (Docket No. 60).

First, the Magistrate Judge concluded that plaintiffs failed to establish a political discrimination prima facie case since there was no evidence to support that plaintiffs had any political relationship with P.N.P. Second, as to plaintiffs' due process claim, the Magistrate concluded that since in the state action and the federal action the parties were practically identical and the State Court made factual findings and engaged in an analysis as to the issue of the due process violation concluding that plaintiffs' due process rights were not violated, pursuant to res judicata, the State Court's

determination barred plaintiffs' due process claim. Third, the Magistrate found that plaintiffs waived their Conspiracy claim pursuant to § 1985. Fourth, the Magistrate Judge concluded that plaintiffs failed to demonstrate any direct involvement by Mayor Sanchez–Bermúdez in León's cancellation of her Section 8 subsidy. The Magistrate further rejected plaintiffs' assertion that the Mayor's participation in the radio program, where neither León or the canceling of anyone's Section 8 benefits was mentioned, is sufficient to provide personal liability. Finally, the Magistrate Judge concluded that since plaintiffs had failed to establish a political discrimination case under the First Amendment, there was no constitutional violation and, hence, co-defendants Torres–Vázquez and Santiago were entitled to qualified immunity.

Plaintiffs solely accepted the Magistrates' determination as to the dismissal of the conspiracy claim. Accordingly, the Court hereby ADOPTS the Magistrate's recommendation and DISMISSES Plaintiffs' conspiracy claim based on plaintiffs' acceptance thereto.

### A. Objection as to the factual scenario

In their opposition, plaintiffs sustain that the *Magistrate Judge's Report and Recommendation* "is totally unsounded (sic) to the real and truthful facts of this case".(Docket No. 61, p. 2). Further, plaintiffs allege that "[a]pparently the real issue was decided first, and afterward the 'factual evidence' of 'Defendant's Undisputed Facts' was imposed to the conclusions." Id.[5] Then, plaintiffs stated what

---

5. Counsel is forewarned · as to making any further unwarranted disparaging remarks against judicial officers of the federal court.

they consider "the real issues in this case".[6]

Since this is a de novo review the Court has examined defendants' summary judgment, plaintiffs' opposition, and both parties' statements of uncontested facts together with all the documents attached to support the proposed facts. The Court has selected all the uncontested facts that were adequately supported, uncontradicted or unimpeached and established the factual landscape applicable to this case. However, the Court finds that plaintiffs' proposed facts were either unsupported or plaintiffs failed to make specific references to the record where support for said statements could be found.

■ When considering a motion for summary judgment "[t]he Court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). However, it is sanctionable to impose upon the Court "the daunting burden of seeking a needle in a haystack ..." *See Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001). Accordingly, the First Circuit Court of Appeals has "encouraged district courts to adopt 'antiferreting' rules, which warn parties opposing summary judgment

that, to preclude judgment as a matter of law, they must identify factual issues **buttressed by record citations.** '[O]nce so warned,' [that Court has] added, 'a party's failure to comply would, where appropriate, be grounds for judgment against that party.'" *Id.* (citing *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 927 (1st Cir.1983)). *Emphasis added.* Indeed, the District Court of Puerto Rico has enacted such a rule.[7] And the First Circuit Court has constantly reiterated, with reference to this particular rule, that "parties ignore [it] at their own peril," and that "failure to present a statement of disputed facts, **embroidered with specific citations to the record,** justifies deeming the facts presented in the movant's statement of undisputed facts admitted." *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir. 2000) *Citations omitted. Emphasis added.*

■ District courts have been specifically and expressly encouraged by the First Circuit Court of Appeals to adopt "anti-ferreting rules" which may assist the Court in adjudicating motions for summary judgment. The "anti-ferret rules" serves one crucial purpose. It lays out the material facts in dispute clearly for a district court swamped with an overwhelming number of civil and criminal dispositive motions. It requires both the moving party and the non-moving party to properly

---

6. Plaintiffs sustain that León and her disabled daughter have the right to recover damages caused by the alleged intentional damages against her fiancé Cruz–Serrano. Plaintiffs allege that although León suffered the damages the intent was to harm Cruz–Serrano. Plaintiffs further sustain that plaintiff León was harmed because of her relationship with Cruz–Serrano "which is in violation to her right to associate with a member of the opposition party." Plaintiffs allege that "Defendants' state of mind was to harm Iván Cruz ...., where Iván was more vulnerable, that

is, through his fiancée and fiancée's daughter."

7. This Court's Local Rule 56(c) requires, in its relevant part, that a party opposing summary judgment is to supply a submittal of facts supported by specific reference to the record. *See* Local Rules of the Court, U.S. Dist. Court for the District of P.R., R. 56 (c). At the time of the filing of the Opposition for Summary Judgment, Local Rule 311.12, was the equivalent to the new Rule 56(c).

support their respective lists of material facts with specific references to the Record." *Velez v. Puerto Rico Electric Power Authority,* 170 F.Supp.2d 158, 162 1st (1st Cir.2001). In the instant case, Plaintiffs failed to comply with the anti ferreting rule set forth by this District, precluding the Court from finding support to several of plaintiffs proposed facts.[8] Accordingly, the Court fails to find any controversy as to any material fact that would preclude the issuance of a summary judgment if, as a matter of law, defendants are indeed entitled to said remedy.

■ Plaintiffs object to the Magistrate's conclusion as to the contents of the transcription of the radio program. The Magistrate concluded that the alleged threatening statements "were not contained in the transcript of the radio program provided to the Court." Magistrate's Report and Recommendation p. 3 fn 3. Plaintiffs sustain that due to an involuntary error pages 9 and 10 of the transcription of the radio program, where such threat is evidenced, were not submitted with their opposition. Plaintiffs submitted them with their *Opposition to the Magistrates Judge's Report and Recommendation.* Second, plaintiffs specifically alleged that the Magistrates Judge's interpretation of the audio tape of the radio program made in the second paragraph of page three of the Report and Recommendation is totally different to the real content of the program.[9] The objected statement states as follows: "Defendant Angel Manuel Sánchez–Bermúdez (hereafter Sanchez), Mayor of Santa Isabel, participated and was present during the above mentioned radio program ..." Plaintiffs sustain that a reasonable person would have inferred:

> "that if the Mayor participate (sic) in a radio program where a person is (El Paparazzi=Iván Cruz) severely threatened by the husband of the Municipal Housing Inspector, where the Mayor talks about the electoral process directly related to Iván Cruz, immediately before the summary cancellation with a fabricated and absurd "justification", the Mayor knew of the Municipal official action." (sic)(literal transcription of *Plaintiff's Motion Opposing Magistrate Judge's Report and Recommendation* (Docket No. 61, p. 4–5)).

Plaintiffs move the Court to listen to the recording where, allegedly, the voice of the Mayor is clearly commanding through all the program, and reach "the only reasonable and logical conclusion" that the Mayor ordered, or at least permitted, the cancellation of plaintiff León's Section 8 benefits.

The Court disagrees. The Court acknowledges that at all times during the

---

**8.** The following facts were deemed as unsupported by the Court: (1)Plaintiffs' proposed uncontested fact No. 13 where plaintiffs alleged that when León went on September 11, 2000 to the Municipal Housing Office, co-defendants, Santiago and Torres–Vázquez, recriminated her for her relationship with Cruz–Serrano. And the allegation that León was forced to sign the minute of said meeting. (On the cross examination during the State Court hearing León admitted that she voluntarily signed the document. She is now barred from alleging otherwise.) *Abreu Guzman v. Ford,* 241 F.3d 69, 74 (1st Cir. 2001)("We have repeatedly held that a party opposing summary judgment may not manu-

facture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed."); (2)Plaintiffs' proposed uncontested facts No. 14 alleging Santiago's mockery against León due to the cancellation of the benefits.

**9.** The Court accepts the first sentence of the paragraph as the one objected since the information contained in the second sentence, (the fact that the conductor of the radio program is married to the housing inspector involved in this situation), is a fact alleged by the plaintiffs.

consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge **all reasonable inferences** in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir., 1994). *Emphasis added.* However, the Court may only make logical, reasonable, syllogistic, rational, plausible inferences. That is, the Court may reach a conclusion "after considering other facts and deducting a *logical* consequence from them." [10] *Emphasis added.* In the instant case, even if in fact the Court accepts plaintiffs' proposition that the Mayor was an active participant of the radio program,[11] where Cruz–Serrano, León's fiancé at the time, was threatened by the Municipal Housing Inspector's husband, still the Court reasonably could not reach the requested conclusion that the Mayor ordered or permitted the cancellation of León's benefits.[12] The Mayor's participation in said broadcast is not related to co-defendants Santiago and Torres–Vázquez's actions as to León's Section 8 benefits. The Court fails to find the alleged "reasonable" connection between the Mayor's participation in the broadcast and the ordering of the cancellation of the benefits. Further, in order to make an inference plaintiffs have to establish the basic facts from which a conclusion could be inferred. Plaintiffs failed to establish that Cruz–Serrano was threatened by either the director of the radio program and husband of co-defendant Zenayda Santiago or Mayor Sánchez–Bermúdez. In the transcript there is only one arguable threat against "El Paparazzi" and it was made by Marcos Martínez, identified in the broadcast as, an Assemblyman. Finally, the Court denies plaintiffs' invitation to listen to the recording of the broadcast. Said recording is in Spanish. Pursuant to Local Rule for the District of Puerto Rico 10(b) any document submitted as evidence in this Court must be accompanied by its English translation. Plaintiffs had the opportunity to submit a translated transcription of the whole recording and chose to submit selected excerpts.[13]

### B. Objection as to the failure to establish Prima facie § 1983 case

Plaintiffs objected the Magistrate's conclusion that they failed to establish a prima

---

**10.** Black's Law Dictionary, 781 (7th ed., 1999).

**11.** The Court acknowledges that the Mayor was present at the radio station and that in the program a failed challenge against a PDP voter was discussed.

**12.** Further, in the missing pages from the transcription that were untimely supplied with the *Plaintiffs' Opposition to the Report and Recommendation* the alleged threat against Cruz–Serrano the "paparazzi" is made by Marcos Martínez (an Assembly man) not by Mayor Sánchez–Bermúdez nor by the radio program director and husband of co-defendant Zenaida Santiago. Plaintiffs in their Statement of Undisputed Facts No. 3 alleged that it was Marcos Franco (Campaign Director) (again not the Mayor) who threatened Cruz–Serrano in the political broadcast. However, said statement is not supported by the transcript. The transcript only revealed the following "threatening" statement made by Marcos Martínez: "Attention Paparazzi. Now you will pay the consequences". But Marcos Martínez is not a co-defendant in this case.

**13.** "The law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English. That rules applies to trials as well as pre-trials process. In collecting a record for summary judgment a district court must sift out non-English materials and parties should submit only English-language materials. Depositions [or recordings] that have not been translated into English are not—and cannot on appeal become—part of the record." *Estades–Negroni v. Associates Corp. of North America,* 359 F.3d 1, 2 (1st Cir., 2004) citing *United States v. Rivera–Rosario,* 300 F.3d 1, 6 (1st Cir.2002).

facie case of political discrimination. Plaintiffs sustain that León had a constitutional right to associate with a member of defendants' opposition party. Plaintiffs allege that they were harmed for exercising their right to associate. Plaintiffs aver that there was a total causal connection between defendants' discriminatory animus and plaintiffs' damages.

■ To prevail in a § 1983 claim, plaintiffs have to demonstrate that defendants deprived them of their federal constitutional rights, privileges or immunities, while acting under color of state law. *Romero Barcelo v. Hernandez Agosto,* 75 F.3d 23, 32 (1st Cir.1996). In order to establish a prima facie case of political discrimination pursuant to § 1983, the plaintiff has to establish that he engaged in a constitutionally protected conduct and that this conduct was the motivating factor in the adverse action. *Id.* See *Mt. Healthy City Sch. Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Further, plaintiffs must demonstrate a causal relation between defendant's conduct and plaintiffs' political beliefs. *LaRou v. Ridlon,* 98 F.3d 659, 663 (1st Cir. 1996). Although circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must make a *fact specific showing* that a causal connection exists between the adverse treatment and their political affiliation. *Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992). *Emphasis added.* In sum, a plaintiff that claims he was a victim of political discrimination "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory *animus.* The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful" *Cor-rea–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir.1990) (overruled on other grounds by *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61 (1st Cir.2004)) *Citations omitted.* It is the plaintiff who bears the initial burden of showing that political discrimination was the motivating factor in the adverse decision. See. *Aviles–Martinez v. Monroig,* 963 F.2d at 5; *Mt. Healthy City School District Board v. Doyle,* 429 U.S. at 287, 97 S.Ct. 568. Only after plaintiffs have established their prima facie case, the burden shifts to defendants who must establish that they would have taken the same action regardless of plaintiffs' political beliefs. *Id* See also, *Sanchez Lopez v. Fuentes Pujols,* 375 F.3d 121 (1st Cir. 2004).

■ In the instant case, plaintiffs have to demonstrate that they engaged in a constitutionally protected conduct and that this conduct was the motivating factor in the cancellation of plaintiff León's Section 8 benefits. Further, this has to be established by a *fact specific showing* **that a causal connection exists between the adverse treatment and the political affiliation.** Plaintiffs are required to establish that "a causal connection exists linking defendants' conduct, . . . to plaintiff's politics". *LaRou v. Ridlon,* 98 F.3d at 662 *citing Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49; See also *Aviles–Martinez v. Monroig,* 963 F.2d at 5. That is, plaintiffs needed to "point to evidence in the record that would 'permit a rational fact finder to conclude that the challenged action occurred and stemmed from a political based discriminatory animus'." Magistrate Judge's Report and Recommendation p. 12 *citing LaRou v. Ridlon,* 98 F.3d at 662 *citing Rivera–Cotto v. Rivera,* 38 F.3d 611 (1st Cir.1994).

In *Correa–Martinez v. Arrillaga–Belendez*,[14] *supra*, plaintiff alleged that he was discriminated against because of his relationship with a former administrative judge whose political beliefs differed from defendants'. There, as in the instant case, plaintiff did not alleged that he was discriminated for his politics, ideology or advocacy of ideas. Instead, as here, plaintiff alleged that defendants had political differences with a third person and discriminated against him because of his close relationship with said person. The First Circuit noted that the First Amendment protects "vigorous advocacy" and the right **"to engage in association for the advancement of beliefs and ideas"** *Id.* at 57 quoting *NAACP v. Button*, 371 U.S. 415, 429–430, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). *Emphasis added.* Further, the First Circuit noted that:

> "the Constitution may be interposed as a barrier to state action only to the extent that the targeted association is characterizable in terms of some constitutional concern. Put in another way, the first amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or a political party, speaking out on matters of public interest, advocacy of reform—falls within the scope of activities eligible for inclusion within the constitutional tent." *Id. Internal citations omitted.*

Plaintiffs further aver that as in *Padilla–Garcia v. Rodriguez*, 212 F.3d 69 (1st Cir. 2000) "in the instant case, it is further supported by plaintiffs allegations[15], her boyfriend's sworn statement and the recorded radio statements of spokespersons of the prevailing Popular Democratic Party, that she was targeted for humiliation and harassment because of her close association to Iván R. Cruz Serrano." *Plaintiffs' Opposition to Defendant's Motion for Summary Judgment*, p. 5–6 (Docket No. 49). Plaintiffs move the Court to conclude that "just as in *Padilla–Garcia v. Rodriguez* where the district court had construed the term political too narrowly in the context of political discrimination, defendants in the instant case misrepresent the proper standard required to addressed their purported challenge to the sufficiency of plaintiff's evidence" .... [Plaintiffs further argued that] "[i]n this context, a highly charged political atmosphere coupled with the fact that plaintiff and defendants were of competing political persuasions may be probative of discriminatory animus." Id at 6.

The Court disagrees. Contrary to the instant case, in *Padilla–Garcia v. Rodriguez*, *supra*, it was established that the plaintiff "was clearly identified as a close ally of the former mayor and **actively campaigned** against the new mayor." *Id.*

---

**14.** This case was overruled by *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir.2004) which held that the heightened pleading standard does not apply in federal civil rights cases except where either federal statutes or specific civil procedure requires that result. However, the Court uses the same as a parallel case with the instant case since plaintiff in that case alleged discrimination due to his close relationship with a person with whom defendants had political differences.

**15.** Plaintiffs referred to León's deposition which was submitted in Spanish allegedly due to time constraints the same was never submitted in English. However, plaintiffs did not request leave to file the same in Spanish pending translation nor offered any excuse as to why the translation was never submitted. Local Rules for this district mandates that all documents presented in Court that are in a language other than English language are to be accompanied with its English translation. Local Rule for the District of Puerto Rico 10(b). See also, *United States v. Rivera–Rosario*, 300 F.3d at 6.

at 76. *Emphasis added.* The Court further concluded that to comply with her burden and establish a prima facie case, plaintiff had to demonstrate that: (1) an affiliation with the rival primary candidate was the motivating factor for the adverse action and; (2) that the affiliation was political. The First Circuit found that since plaintiff established that *she was a well known supporter of the new mayor's rivals within the party and had actively campaigned against him in a hotly contested primary election* [16] the relationship was political and warranted the First Amendment protection. The Court found that "[s]upport for a political candidate—whether as an official in his administration or a behind the scenes member of his campaign—is an example of an association that inevitably implicates the right to engage in association for the advancement of beliefs and ideas." *Id.* at 76. Quoting *Correa Martinez v. Arrillaga,* 903 F.2d 49, 57.

In the instant case, however, the relationship between León and Cruz–Serrano was strictly personal. Plaintiffs admitted that the relationship was not political. Cruz–Serrano admitted that León was not a political activist and is not affiliated to any political party. Hence, she is not known as an N.P.P. affiliate. Plaintiffs based León's discriminatory allegation in her personal relationship with Cruz–Serrano who's political beliefs are contrary to those of the defendants. However, "merely juxtaposing a protected characteristic-someone else's politics—with the fact that plaintiff was treated unfairly" *Padilla–*

*Garcia v. Rodriguez,* 212 F.3d at 75 citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d at 58 (1st Cir.1990) is insufficient, as a matter of law, to state a constitutional claim. León's association with Cruz–Serrano did not "implicate the right to engage in association for the advancement of beliefs and ideas." *Padilla–Garcia v. Rodriguez,* 212 F.3d at 76. Hence, said association is not protected by the First Amendment. "Absent a constitutionality protected aspect, a 'close relationship with a third party is insufficient' " to establish that defendants decisions were tainted by their disregard of plaintiffs First Amendment rights. *LaRou v. Ridlon,* 98 F.3d at 662 citing *Correa–Martinez v. Arrillaga–Belendez* 903 F.2d at 58. Further, plaintiffs failed to enumerate a single instance to enable the Court to infer that co-defendants Santiago and Torres–Vázquez's conduct toward León was casually connected with her political affiliations or even to her fiancé's political affiliation. Plaintiffs failed to make a fact-specific showing that a causal connection existed linking defendants conduct to plaintiffs politics. *Aviles–Martinez v. Monroig,* 963 F.2d at 5; *LaRou v. Ridlon,* 98 F.3d at 663. In sum, plaintiffs failed to establish a political discrimination prima facie case. Accordingly, *Defendants' Motion for Summary Judgment* as to the § 1983 claim is hereby GRANTED.[17]

## C. Objection as to the conclusion that the Due Process Claim is barred

Plaintiffs further objected the Magistrate Judge's conclusion that the Due Pro-

---

**16.** "The record shows that Padilla–García was not just affiliated with the rival faction-she was clearly identified as a close ally of the former mayor and actively campaigned against the new mayor." *Id.* at 75–76

**17.** Since the Court concluded that plaintiffs failed to establish a prima facie discrimination case, we need not to discuss neither

plaintiffs' objection as to the Magistrate's conclusion that co-defendants Santiago and Torres–Vázquez are entitled to qualified immunity nor plaintiffs' objection as to the finding that the Mayor was not personally involved in the alleged discriminatory action to be personally liable.

cess claim was barred by res judicata. Plaintiffs sustain that the Superior Court action was limited to request a post deprivation hearing which was dismissed as academic. Plaintiffs argue that both actions are not the same since the former was a *Writ for Mandamus* and the present is a § 1983 claim where plaintiffs assert that plaintiff León's First Amendments rights were violated. Plaintiffs further sustain that the matter is not barred since the requisites of claim preclusion have not been met.

The Court first addresses plaintiffs' argument that the instant claim is not barred because the requisites for claim preclusion have not been met. "Federal Courts must give full faith and credit to final judgments of the Commonwealth of Puerto Rico." *Muniz Cortes v. Intermedics* 229 F.3d 12, 14 (1st Cir.2000); see also 28 U.S.C § 1738. Federal courts should look to state law to determine the preclusive effect of the state judgment. *Id.* Under Puerto Rico law the doctrines of *res judicata* and collateral estoppel preclude relitigation of claims and/or issues which have been **or could have been litigated in a prior judicial** action for which judgment has been rendered. *Emphasis added. Muniz Cortes v. Intermedics* 229 F.3d at 15; *See generally, Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568,

78 L.Ed.2d 379 (1984). For the presumption of res judicata to operate, it is required that between the former case decided by a Sentence and the case where res judicata is invoked "there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such". 31 L.P.R.A. § 3343. In other words, res judicata precludes a claim if it is established that a final judgment on the merits in an earlier suit was issued where the claims asserted in both suits and the parties in both suits are sufficiently identical *Gonzalez v. Banco Central Corp.,* 27 F.3d 751, 755 (1st Cir.1994). Further, pursuant to collateral estoppel, when an issue essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent litigation among the parties *Muniz Cortes v. Intermedics* 229 F.3d at 14 quoting *Felix Davis v. Vieques Air Link,* 892 F.2d 1122, 1124–25 (1st Cir.1990) *citations omitted.*

Plaintiffs argue that the issue sought in the instant § 1983 federal action is not identical to the issue determined at the Superior Court's proceedings. Plaintiffs sustain that both actions are not the same since the former was a *Writ of Mandamus* and the present is a § 1983 claim were plaintiffs assert that their First and Fourteenth Amendments rights were violated. The Court agrees with Plaintiffs that the two actions are not identical and, therefore, the Sentence issued by the Superior Court may not have a preclusive effect over the totality of the present action.[18] However, the Court finds that the

18. Since plaintiffs failed to establish a prima facie case it is unnecessary for the Court to determine the totality of the preclusive effect that the request for a *Writ of Mandamus* at the State Court has over not only the issues presented at the state proceedings, but any claim that could have been presented at said proceedings. The Supreme Court has held that under the federal full faith and credit statute, federal courts in § 1983 actions must accord the same preclusive effect to state court judgments—both as to claims and issues previously adjudicated—as would be given in the state court system in which the federal

Superior Court's decision has a preclusive effect as to the due process claim presented in the instant case.

At the Superior Court, plaintiffs alleged that León's Section 8 benefits were terminated without providing her with notification and due process of law in violation of state and federal laws. Plaintiffs sustained that the Municipality failed to celebrate an administrative hearing and that failure to hold said hearing resulted in damages to her and her minor child. The Superior Court, however, determined that the Municipality provided León with an administrative hearing where her due process rights were observed. This Judgment became final and unappealable. As the Magistrate Judge, this Court concludes that plaintiffs' due process claim is precluded by the Superior Court's determination. The parties in both actions are identical[19]. Although the action presented at the State Court was a *Writ of Mandamus* that did not raise the issue of León's due process violation by political discrimination but rather that her Section 8 subsidy was cancelled without affording her due process rights, in order to deny plaintiffs' request, the State Court made factual findings and engaged in an analysis as to plaintiffs' due process claim. The State Court clearly made a determination on the merits as to said claim. Since the State Court found that the requested hearing was provided and failed to find any violation of León's due process rights, the State Court dismissed, as moot, plaintiffs' *Writ of Mandamus* requesting an order instructing the Municipality to celebrate a hearing. In other words, in order to arrive at its determination the State Court had to first determine that in the cancellation of her benefits, León's due process rights were observed. This was an essential issue to the State Court Judgment and, pursuant to res judicata, the State Court's determination is conclusive and precludes any subsequent litigation as to this issue among the parties *Muniz Cortes v. Intermedics,* 229 F.3d at 14. Further, the defendants could have litigated in the State Mandamus action the federal due process claims and, thus, are barred from litigating said federal claim by res judicata. *Muniz Cortes v. Intermedics,* 229 F.3d at 15. Accordingly, as the Magistrate concluded, this Court finds that León was afforded of ample opportunity to litigate her due process claim in the State Court and, therefore, is precluded from litigating the same issue at the federal court. Therefore, *Defendants' Motion for Summary Judgment* as to Plaintiffs' due process claim is GRANTED.[20]

court sits. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 83–84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The Court has rejected the notion that in the § 1983 context, "distrust of state courts ... would justify a limitation on the preclusive effect of state judgments," and has instead stressed the need to accommodate "notions of comity, [and to] ... prevent vexatious litigation." *Id.,* at 84, 104 S.Ct. 892. Federal courts must therefore look to state law to determine whether a party to a § 1983 action will be barred from relitigating an issue previously presented in state court (issue preclusion), **or from raising a claim that could have been presented in the state proceeding (claim preclusion).** *Id. Emphasis added.*

**19.** Except for co-defendant Zenaida Santiago who was not included at the State Court action.

**20.** Since plaintiffs failed to establish a prima facie case as to the discrimination claim, therefore, the burden never shifted to defendants to provide a legitimate reason for their action. Further, since the State Court already has decided that in plaintiff León's cancellation of the Section 8 benefits a hearing was provided and León's due process rights were not violated, the Court needs not to address plaintiffs' allegation that the Magistrate's conclusion that León violated the regulations of the Section 8 benefits causing the

## V. Conclusion

The general principles underlying a motion for summary judgment fully apply to discrimination actions. Courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue. *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d at 95. However, " 'even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.' " *Id.*, *quoting Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993) *quoting Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

In the instant case, plaintiffs failed to establish a prima facie case of discrimination. Further, their due process claim was precluded by the State Court's previous determination. Accordingly, *Defendants' Motions for Summary Judgment* (Docket No. 44) is hereby **GRANTED.** Consequently, plaintiffs' complaint is hereby **DISMISSED.** Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

cancellation of her benefits, was unsupported by the evidence.